IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUSTON WALTRIP, *et al.*,

     Plaintiffs,

v.                                     Civ. No. 21-642 GBW/KRS

PILOT TRAVEL CENTERS, *et al.*,

     Defendant.

## ORDER GRANTING, DENYING, AND DEFERRING JUDGMENT ON IN PART DEFENDANTS' MOTIONS TO COMPEL ARBITRABILITY AND ENFORCE CLASS ACTION WAIVER, DENYING DEFENDANTS' MOTION TO DISMISS, GRANTING AND DENYING IN PART PLAINTIFFS' MOTION FOR JURY TRIAL ON ARBITRABILITY, AND DENYING AS MOOT PLAINTIFFS' RENEWED MOTION FOR JURY TRIAL ON ARBITRABILITY

THIS MATTER comes before the Court on Defendants' Motion to Compel Arbitration, Motion to Enforce Class Action Waiver, Motion to Dismiss (*doc. 27*), Plaintiffs' Response to Defendants' Motion to Stay Discovery and Motion for Jury Trial on Arbitrability (*doc. 35*), and Plaintiffs' Motion for Jury Trial on Arbitrability (*doc. 56*). Having reviewed the Motions and their attendant briefing, *see docs. 37, 41, 53, 58, 61*, having conducted a hearing on these Motions, *see doc. 65*, and being fully advised in the premises, the Court (i) REVISITS Plaintiffs' Motion for Jury Trial on Arbitrability (*doc. 35*) in their Response to Defendants' Motion to Stay Discovery, GRANTS this Motion IN PART as to Plaintiffs Carroll and Rocha, and DENIES this Motion IN PART as to other Plaintiffs; (ii) DENIES Plaintiffs' Motion for Jury Trial on Arbitrability (*doc. 56*) as

MOOT; (iii) GRANTS Defendants' Motion to Compel Arbitrability (*doc. 27*) IN PART as to Plaintiffs other than Plaintiffs Carroll, Guerrero, and Rocha, DENIES this Motion IN PART as to Plaintiff Guerrero, and DEFERS JUDGMENT on this Motion IN PART as to Plaintiffs Carroll and Rocha pending a summary jury trial to resolve genuine issues of material fact; (iv) GRANTS Defendants' Motion to Enforce Class Action Waiver (*doc. 27*) IN PART as to Plaintiffs other than Plaintiffs Carroll, Guerrero, Olivas, Rocha, and Sanchez, DENIES this Motion IN PART as to Plaintiffs Guerrero, Olivas, and Sanchez, and DEFERS JUDGMENT on this Motion IN PART as to Plaintiffs Carroll and Rocha pending a summary jury trial to resolve genuine issues of material fact; and (v) DENIES Defendants' Motion to Dismiss (*doc. 27*) as to all Plaintiffs.  All denials as to Plaintiff Guerrero are WITHOUT PREJUDICE to the parties' renewing their motions as to him since he opted into the collective action after the parties filed their motions.  *See docs. 27, 56, 59.*

## I.   BACKGROUND

This case arises from Defendants' alleged failure to pay overtime to Plaintiffs[1] and similarly situated truck drivers in violation of the New Mexico Minimum Wage Act

---

[1] Plaintiffs number twenty-two. Eighteen joined in the Complaint.  *See doc. 1* at ¶ 7 (joining 1. Juston Waltrip; 2. Jonathan Winckler; 3. Sergio Olivas; 4. Melvin Sanchez; 5. Matthew Hull; 6. Joseph Carroll; 7. Nathaniel Cooley; 8. Candelario Cordero-Jaime; 9. Anthony Delzotto; 10. Jeremiah Heisey; 11. Daniel Madrid; 12. Javier Martinez; 13. Carlos Moreno; 14. Manuel Moreno; 15. Edward Ogier; 16. Andres Rocha; 17. Carlos Pina Salazar; and 18. McKannin Young).  Four have since opted into the FLSA collective action. *See docs. 5, 20, 22, 59* (joining Brian Andrews; Rafael Garcia; Christopher Tabory; and Oscar Guerrero).

("NMMWA"), N.M. Stat. Ann. § 50-4-19 *et seq.*, and the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.  See generally doc. 1* (alleging class and collective actions

pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b)).

On October 27, 2021, Defendants moved the Court to compel arbitration, enforce

class action waivers, and dismiss Plaintiffs' Complaint, contending that its claims "are

barred … because [Plaintiffs] expressly waived their rights to proceed as a class or

collective, and affirmatively agreed to resolve any and all disputes through binding,

individual arbitration." *See doc. 27* at 2.  Plaintiffs timely responded on November 29,

2021.  *See docs. 31, 37.*  Briefing was complete on December 27, 2021, with the timely

filing of Defendants' reply.  *See doc. 48, 53.*  On March 31, 2022, Defendants filed a notice

of recent supplemental authority, informing the Court that the Honorable Stephan M.

Vidmar had granted their Motions to Compel Arbitration and Enforce Class Action

Waiver in a companion case[2] involving many of the same parties.  *See doc. 62.*

Meanwhile, on November 18, 2021, Plaintiffs moved the Court for a jury trial on

arbitrability in their Response to Defendants' Motion to Stay Discovery, contending that

a genuine factual dispute about contract formation exists.  *See doc. 35* at 4-5.  Defendants

opposed this request for procedural impropriety and lack of such a factual issue.  *See*

---

[2] The companion case alleges violations of the Worker Adjustment and Retraining Notification
("WARN") Act, 29 U.S.C. § 2101 *et seq.*, rather than NMMWA and FLSA violations.  *Compare* Complaint,
*Waltrip v. Pilot Travel Ctrs., LLC*, Case No. 21-cv-0643 SMV/KRS, 2022 WL 684327 (D.N.M. Mar. 8, 2022),
*with doc. 1.*

*doc. 41* at 3.  On December 14, 2021, the Court denied this initial jury trial request for

being made in a response brief rather than a separate motion.  *See doc. 47* at 2 n.1.  On

January 20, 2022, Plaintiffs renewed their request for a jury trial via in their Motion for

Jury Trial on Arbitrability.  *See doc. 56.*  Defendants responded in opposition on

February 3, 2022, contending that Plaintiffs' request for a jury trial is untimely and no

genuine issues of material facts exist.  *See doc. 58*.  Briefing was complete on this motion

on February 17, 2022, with the filing of Plaintiffs' reply.  *See doc. 61*.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") permits a party to move the Court to

compel arbitration of issues covered by a valid arbitration agreement.  *See* 9 U.S.C. § 4.

Substantively, the movant must show that (i) the parties formed an agreement to

arbitrate; and (ii) their dispute falls within that agreement's scope.  *Soc'y of Pro. Eng'g*

*Emps. in Aerospace v. Spirit AeroSystems, Inc.*, 681 F. App'x 717, 721 (10th Cir. 2017) (citing

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 299 (2010)).  Formation

"must always be decided by a court."  *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105

(10th Cir. 2020).  Courts also decide arbitrability—i.e., whether the parties' dispute falls

within the scope of their arbitration agreement—unless there is "clear and unmistakable

evidence" that the parties agreed to delegate this issue to the arbitrator.  *See Belnap v.*

*Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017).  Arbitrable disputes include not

only the interpretation of an agreement's scope but also gateway issues such as the

4

agreement's enforceability as a matter of public policy.  *See Fedor*, 976 F.3d at 1106

(citing *Granite Rock Co.*, 561 U.S. at 297, 299).

Procedurally, a motion to compel arbitration resembles a motion for summary

judgment:

> the party moving to compel arbitration bears the initial burden of
> presenting evidence sufficient to demonstrate the existence of an
> enforceable agreement and the opposing party's failure, neglect, or refusal
> to arbitrate; if it does so, the burden shifts to the nonmoving party to raise
> a genuine dispute of material fact regarding the existence of an agreement
> or the failure to comply therewith.

*BOSC, Inc. v. Bd. of Cnty. Comm'rs of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017).

"[E]vidence need not be submitted 'in a form that would be admissible at trial'" but its

"content or substance … must be admissible."  *Argo v. Blue Cross & Blue Shield of Kan.,*

*Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986), and *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995)).

Viewing the evidence in the light most favorable to the party opposing

arbitration, the Court takes a "quick look" at the record to determine whether a genuine

issue of material fact exists.  *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th

Cir. 2014).  "An issue is 'genuine' if there is sufficient evidence on each side so that a

rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if

under the substantive law it is essential to the proper disposition of the claim."  *Thom v.*

*Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  If a

genuine dispute of material fact exists, the Court proceeds to a summary trial to clarify

the facts. *Howard*, 748 F.3d at 978.  Otherwise, the Court resolves the two-part inquiry

as a matter of law without trial. *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261

(10th Cir. 2012).

### III.    ANALYSIS

All Plaintiffs except Plaintiffs Carroll, Guerrero, and Rocha must arbitrate their

disputes with Defendants.  Plaintiffs other than these three executed arbitration

agreements with Defendants, which contain conscionable provisions that clearly and

unmistakably delegate arbitrability to the arbitrator.  Except for Plaintiffs Olivas and

Sanchez, Plaintiffs other than Plaintiffs Carroll, Guerrero, and Rocha must arbitrate as

individuals because their arbitration agreements waive class arbitration, and these

waivers are not unconscionable.  Whether Plaintiffs Olivas and Sanchez may arbitrate

as a class is an issue for the arbitrator to decide.

As for Plaintiffs Carroll and Rocha, genuine issues of material fact exist about

whether they formed agreements to arbitrate with Defendants.  These factual disputes

shall be resolved via a summary jury trial.  Plaintiffs' request for a jury trial in their

Response to Defendants' Motion to Stay Discovery and Motion for Jury Trial on

Arbitrability is sufficient to invoke their statutory right to a jury trial provided in 9

U.S.C. § 4, even if the general jury demand in Plaintiffs' complaint is not.   The Court

denied that request for being raised in a response but exercises it discretion to revisit

that interlocutory order and grant Plaintiffs Carroll and Rocha a jury trial.

Finally, as for Plaintiff Guerrero, Defendants present no evidence that he formed

any agreement to arbitrate (as Plaintiff Guerrero opted into the collective action after

Defendants filed their Motions).  Therefore, the Court denies their Motions as to him

without prejudice to their renewal.

A. ALL PLAINTIFFS EXCEPT PLAINTIFFS GUERRERO, CARROLL AND ROCHA
   MUST ARBITRATE THEIR DISPUTES WITH DEFENDANTS.

All Plaintiffs except Plaintiffs Guerrero, Carroll, and Rocha must arbitrate their

disputes with Defendants.  Other than these three Plaintiffs, each Plaintiff formed an

arbitration agreement with Defendants that clearly and unmistakably delegates the

arbitrability of their disputes to the arbitrator.

1. *Arbitration Agreements Exist for All Plaintiffs Except Plaintiffs Carroll, Rocha, and
   Guerrero*

Other than Plaintiffs Guerrero, Carroll, and Rocha, each Plaintiff is party to an

arbitration agreement with Defendants, though not every agreement has the same terms

and the evidence for these agreements' existence differs.  "The existence of an

agreement to arbitrate is a threshold matter which must be established before the FAA

can be invoked."  *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997).  To

determine whether such an agreement exists, the Court "appl[ies] ordinary state-law

principles that govern the formation of contracts."  *Hardin v. First Cash Fin. Servs., Inc.*,

465 F.3d 470, 475 (10th Cir. 2006) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S.

938, 944 (1995)).  New Mexico law conditions the formation of an agreement to arbitrate

on "an offer, an acceptance, consideration, and mutual assent."  *Flemma v. Halliburton*

*Energy Servs., Inc.*, 303 P.3d 814, 822 (N.M. 2013).

The parties dispute only acceptance and mutual assent.  *See generally docs. 37, 53.*

"[A]cceptance of a written offer may be express or implied by conduct."  *DeArmond v.*

*Halliburton Energy Servs., Inc.*, 81 P.3d 573, 578 (N.M. Ct. App. 2003).  Mutual assent is "a

meeting of the minds," *United Water N.M., Inc. v. N.M. Pub. Utility Comm'n*, 910 P.2d

906, 910 (N.M. 1996), and its existence "is based on objective evidence, not the private,

undisclosed thoughts of the parties," *Pope v. Gap, Inc.*, 961 P.2d 1283, 1287 (N.M. Ct.

App. 1998).  "Parties can be said to mutually assent to a contract when they have the

same understanding of the contract's terms…."  *DeArmond*, 81 P.3d at 580.  Where the

agreement is express, "each party … has a duty to read and familiarize himself with

[its] contents" and "is presumed to know [its] terms."  *Ballard v. Chavez*, 868 P.2d 646,

648 (N.M. 1994).  When acceptance of an offer is implied by conduct—such starting or

continuing employment—the performing party must have notice of the offer for minds

to meet.  *See DeArmond*, 81 P.3d at 580.

To facilitate its formation analysis, the Court divides Plaintiffs into five groups

based on the evidence in the record and the parties' positions: (i) Plaintiff Guerrero (for

whom the record contains no evidence of any agreement to arbitrate due to his joinder

as a collective action Plaintiff after Defendants filed their Motions); (ii) Plaintiff Carroll (for whom the record contains circumstantial—but not direct—evidence of an agreement to arbitrate and a factual dispute about whether that agreement was formed); (iii) Plaintiff Rocha (for whom the record contains an electronically signed, complete Mediation and Arbitration Agreement ("MAA") and a factual dispute about whether he executed that signature); (iv) Written MAA Plaintiffs (Plaintiffs for whom the record contains a recreated, written MAA whose signature page bears either their signature or printed name); and (v) Electronic MAA Plaintiffs (Plaintiffs for whom the record contains a copy of an original MAA that bears their electronic signature and Plaintiffs no longer contest formation).  Based on the evidence in the record and Plaintiffs' concessions during oral argument, each Electronic MAA and Written MAA Plaintiff formed an express arbitration agreement with Defendants and Plaintiff Guerrero formed no such agreement—express or implied.  As for Plaintiffs Carroll and Rocha, genuine issues of material fact exist about whether they formed agreements to arbitrate with Defendants.

i.   PLAINTIFF GUERRERO

The record contains no evidence of any arbitration agreement between Defendants and Plaintiff Guerrero, presumably because he joined the collective action after Defendants filed their Motions.  *See docs. 27, 59*.  Due to the timing of Plaintiff Guerrero's joinder and in an effort to conserve judicial resources and reduce litigation

costs, the Court directs the parties to meet and confer about the applicability of this

Order's analysis to Plaintiff Guerrero after they exchange evidence for the existence (or

non-existence) of an arbitration agreement between him and Defendants.

ii.   PLAINTIFF CARROLL

A genuine issue of material fact exists about whether Plaintiff Carroll and

Defendants formed an express or implied agreement to arbitrate.  Defendants offer only

circumstantial evidence that Plaintiff Carroll formed an express arbitration agreement

with them.  *See doc. 65* at 2.  In lieu of any MAA or signature page bearing Plaintiff

Carroll's signature, Defendants provide testimonial and documentary evidence for two

facts: (i) Defendants had a regular policy of requiring employees to execute arbitration

agreements with them when Plaintiff Carroll was hired and onboarded, *see doc. 27-65*

(important handbook acknowledgement signed by Plaintiff Carroll stating this policy);

*doc. 27-66* at 4 (employment application signed by Plaintiff Carroll acknowledging this

policy); *doc. 53-1* at ¶¶ 3, 6-7 (declaration by Katrice Yancey, Defendants' HR Business

Partner-Transportation, who has "personal knowledge of [Defendants'] policies and

procedures regarding … onboarding," that these policies include presenting MAAs for

signature during onboarding); and (ii) Plaintiff Carroll's hiring and onboarding

complied with this practice, *see doc. 27-67* (driver qualification checklist for Plaintiff

Carroll containing a check mark next to "Arbitration Agreement"); *doc. 53-1* at ¶¶ 3, 12

(a declaration by Ms. Yancey, who has "personal knowledge of [Defendants'] policies

and procedures regarding the … Driver Qualification Checklist," that "[i]t was [Defendants'] regular practice to create and maintain [this] Checklist to track which documents were signed by employees during the onboarding process" and "make a check mark next to each listed document after the document was presented to the employee, reviewed and signed by the employee, and returned to [Defendants]").

Plaintiffs contend that the important handbook acknowledgment, employment application, and driver qualification checklist for Plaintiff Carroll are inadmissible hearsay. *See doc. 37* at 16. Even if assertions in these documents about Defendants' onboarding policies and compliance with these policies are offered for the truth of their contents, they are nonetheless admissible under Federal Rule of Evidence 803(6)'s "business records exception." This exception provides for the admissibility of statements otherwise inadmissible as hearsay if they are contained in a record of an act or event that meets the following criteria: (i) "the record was made at or near the time [of the act or event] … by someone with knowledge"; (ii) "the record was kept in the course of a regularly conducted activity of a business…"; (iii) "making the record was a regular practice of that activity"; (iv) "all of [the above three] conditions are shown by the testimony of the custodian or another qualified witness…"; and (v) "the opponent does not show that the information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). Ms. Yancey's declaration establishes that she is a qualified witness, *see doc. 53-1* at ¶ 3 (stating that she has

personal knowledge of Defendants' policies and procedures regarding the employment application, handbook acknowledgment, driver qualification checklists), and that Plaintiff Carroll's employment application, handbook acknowledgment, and driver qualification checklist were "maintained by personnel or staff of [Defendants], or persons acting under their control, and … prepared in the regular course of business, at or about the time of the act, condition, or event record," *id.* at ¶¶ 4, 11.

Plaintiffs fare better producing evidence disputing whether Plaintiff Carroll's onboarding complied with Defendants' practice of requiring employees to execute arbitration agreements.  Plaintiff Carroll states in a declaration that he "do[es] not recall" executing a MAA or "ever seeing [or] signing one as a condition of [his] employment" and "ha[s] no recollection of" and "did not agree to paragraphs 1 through 16 of the [18-Clause Written MAA (*doc. 27-1*)],'", *see doc. 37-15* at ¶¶ 2-4, 6, the MAA that Defendants contend that he executed, *see doc. 65* at 3.  Plaintiff Carroll's present inability to recall forming, seeing, or signing an arbitration agreement does not create a genuine dispute of material fact about whether he formed such an agreement with Defendants. *See, e.g.*, *Walker v. Dillard's, Inc.*, CV 17-657 MV/KK, 2019 WL 1283001, at *3 (D.N.M. Mar. 20, 2019) (gathering federal cases for this proposition).  But a genuine factual dispute about formation is created by Plaintiff's assertion that he never agreed to the terms of the MAA that Defendants claim him to have executed and Defendants' inability to produce any arbitration agreement bearing his signature or other

manifestation of agreement.  *See Chester v. DirecTV, LLC*, 607 F. App'x 362, 363-65 (5th

Cir. 2015) (holding that a genuine factual dispute existed about the formation of an

arbitration agreement where the employer produced evidence of a regular practice of

requiring employees to execute these agreements but not an agreement signed by an

employee, and that employee offered an affidavit in which he declared that he did not

complete any such agreement).

    As an alternative to an express arbitration agreement, Defendants also contend

that Plaintiff Carroll formed an implied-in-fact arbitration agreement with them by

"deci[ding] to accept employment with [them] after receiving notice that his

employment was contingent upon his agreement to arbitrate any and all disputes with

[them]."  *See doc. 27* at 13.  "Where [an] offer invites acceptance through performance,

rather than in writing, the beginning of invited performance is an implied acceptance"

so long as the accepting party is both "aware of the offer and aware that his conduct

could constitute acceptance."  *DeArmond*, 81 P.3d at 578-79.

    To support a finding as a matter of law that Plaintiff Carroll had the requisite

awareness, Defendants point to two contractual notices that he received during his

application and onboarding process: (i) notice that his "employment is subject to and

contingent upon the signing of the [MAA] presented to [him] and signed when [he]

completed [his] new hire paperwork," *see doc. 27-65* (important handbook

acknowledgement); and (ii) notice that he "will be required as a condition of

13

employment to agree to [Defendants'] dispute resolution procedure, including binding arbitration, *see doc. 27-66* at 4 (employee application).  However, the language of these notices is only sufficient to establish that Plaintiff Carroll knew that working for Defendants manifested an agreement to agree to a separate (future or concurrent) arbitration agreement.  Therefore, his subsequent employment with that knowledge only created an implied in-fact contract to agree to that arbitration agreement.  *See, e.g.*, *Varma v. TCC Wireless, LCC*, 478 F. Supp. 3d 724, 733-34 (N.D. Ill. Aug. 12, 2020) (holding that accepting an offer "contingent upon [the offeree] signing all necessary new hire paperwork and agreements," including an arbitration agreement, created an "agreement to sign an agreement," not an arbitration agreement); *cf. Reyna Fin. Corp. v. Art Janpol Volkswagen, Inc.*, 800 P.2d 731, 733 (N.M. 1990) (holding that an express statement in a contract to assume liabilities via a separate, future contract did not form an assumption agreement).  An agreement to agree to a separate arbitration agreement is not itself an arbitration agreement.  *Cf. Reyna*, 800 P.2d at 733 ("[A]n agreement to agree is not itself an assumption.").

This distinction is significant in New Mexico contract law.  In *Reyna*, the New Mexico Supreme Court held that an agreement "to assume [a] lease from [a third party] outside of closing" is an agreement to agree to an assumption of the lease, not an assumption agreement, because the contractual language "refers to action to be taken in the future."  *See* 800 P.2d at 733.  Similarly, the notices in the important handbook

acknowledgment and employment application refer to executing separate or future agreements. *See doc. 27-65* (explaining that employment is subject and contingent to signing a separate arbitration agreement); *doc. 27-66* at 4 (explaining that employees "will be required as a condition of employment to agree to [Defendants'] dispute resolution procedure, including binding arbitration"). Therefore, the language of these documents did not, as a matter of law, put Plaintiff Carroll on notice when he applied to work for Defendants or during his onboarding that working for Defendants would immediately manifest an agreement to arbitrate his disputes with them.[3]

        iii.   PLAINTIFF ROCHA

        A genuine issue of material fact also exists about whether Plaintiff Rocha and Defendants formed an agreement to arbitrate. Defendants offer direct and circumstantial evidence for this agreement's existence. The direct evidence is a true and correct copy of an electronic MAA bearing an electronic signature with the name Andres Rocha and containing a section entitled "Agreement to Arbitrate; Designated

---

[3] The Court acknowledges that other judges in this District have previously read the language in the important handbook acknowledgment and employment application as sufficient to notice Defendants' employees that working for Defendants manifests assent to an arbitration agreement. *See Waltrip v. Pilot Travel Ctrs., LCC*, Case No. 21-cv-0643 SMV/KRS, 2022 WL 684327, at *7 (D.N.M. Mar. 8, 2022); *Drasal v. Pilot Traveling Ctrs., LLC*, No. 2:19-cv-00981 KWR/CG, 2020 WL 1158551, at *3 (D.N.M. Mar. 10, 2020). In *Drasal*, though, the court applied Texas law when it concluded that the important handbook acknowledgment and employment application were "unequivocal notification that employment would constitute acceptance of the arbitration agreement." *See* 2020 WL 1158551, at *3. And in *Waltrip*, the court simply cited *Drasal*. *See Waltrip*, 2022 WL 684327, at *7 (citing *Drasal*, 2020 WL 1158551, at *3). In neither case did the court assess whether the implied-in-fact contract an employee formed by working for Defendants after receiving these notices was an agreement to agree to arbitration, rather than an agreement to arbitration itself.

Claims."  *See doc. 27-50* at 1, 4 (Plaintiff Rocha's MAA); *doc. 53-1* at ¶ 7 (declaration of Ms. Yancey authenticating this MAA).  The circumstantial evidence is documentation and statements by Ms. Yancey establishing that Defendants had regular practice of requiring employees to execute electronic arbitration agreements when Plaintiff Rocha was hired and onboarded.  *See doc. 27-51* (Plaintiff Rocha's important handbook acknowledgment stating this practice); *doc. 27-52* at 4 (Plaintiff Rocha's employment application acknowledging this practice); *doc. 53-1* at ¶ 7 (declaration of Ms. Yancey).[4]

Plaintiffs dispute the sufficiency of this evidence.  They contend that the MAA for Plaintiff Rocha does not establish an arbitration agreement between him and Defendants since it "contains no electronic signature, no printed name, and no indicia whatsoever that Mr. Rocha ever agreed to or even saw the [MAA]."  *See doc. 37* at 19. Plaintiffs misread this MAA's signature page.  The page states that Plaintiff Rocha's electronic signature is "on file—Secured with ApplicantCare™," provides a verification number for that signature, and contains Plaintiff Rocha's typed name.  *See doc. 27-50* at 4.  Admittingly, this signature page lacks an image of Plaintiff Rocha's electronic signature, *see id.*, and Defendants have not produced whatever version of the electronic signature is on file with ApplicantCare.

_____

[4] The record also contains a driver qualification checklist for Plaintiff Rocha.  But unlike the checklist for Plaintiff Carroll, this checklist contains no evidence about whether Plaintiff Rocha executed an arbitration agreement.  *See doc. 27-53* (omitting arbitration agreement from the list of documents received or not received for Plaintiff Rocha).

But whether Plaintiff Rocha electronically signed this MAA does not hinge on the presence or absence of an image of his signature or the production of ApplicantCare's record of that signature. New Mexico's Uniform Electronic Transactions Act defines an electronic signature as "an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." N.M. Stat. Ann. § 14-16-2(8). Mr. Rocha's typed name is an electronic symbol and the verification number for an electronic signature on-file elsewhere evinces the execution of an electronic signature process.

Instead, whether Plaintiff Rocha electronically signed the MAA turns on whether he executed or adopted his typed name on that MAA, or the electronic signature process evinced by that MAA. "An … electronic signature is attributable to a person if it was the act of the person," which "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the … electronic signature [is] attributable." N.M. Stat. Ann. § 14-16-9. The attributability of the electronic signature on the MAA for Plaintiff Rocha is a genuine issue of fact.

Defendants do not offer any evidence of procedures or systems ensuring that Plaintiff Rocha was the person who executed or adopted the electronic signature.[5] *Cf.,*

---

[5] Defendants argue that Ms. Yancey's declaration "proves that the [MAA] was presented to Plaintiff Rocha in electronic format for his review, that he adopted and signed the agreement, and that he approved the verification of his signature to be attached, through his use of Defendants' human resources software." *Doc. 53* at 7. Ms. Yancey, though, only has personal knowledge about Defendants' policies and procedures for MAAs and onboarding, not what happened during Plaintiff Rocha's onboarding. *See doc. 53-1* at ¶ 3. Also, her statements about Defendants' policies and procedures do not discuss

*e.g.*, *Walker v. VXI Global Sols.*, 2021 WL 2525721, at *2 (employee had to log into employer's computer system using her employee identification number and password to access and sign the electronic arbitration agreement); *Farmer v. Macy's, Inc.*, Civil Action No. TDC-17-0567, 2019 WL 5079763, at *5 (D. Md. Oct. 10, 2019) (employee had to enter social security number, month and date of birth, and zip code to access and sign electronic arbitration agreement).  Instead, the only evidence Defendants offer for attribution is the aforementioned regular practice of presenting MAAs to employees in electronic format for electronic signature when Plaintiff Rocha was onboarded.  *See doc. 53-1* at ¶ 7 (Ms. Yancey's declaration); *doc. 27-51* (Plaintiff Rocha's important handbook acknowledgment); *doc. 27-52* at 4 (Plaintiff Rocha's employment application).  Plaintiff Rocha, for his part, does not dispute that Defendants complied with this practice during his onboarding.  *Cf. doc. 37-12* at ¶¶ 2-3 (denying recalling the MAA, but not seeing it). He does, though, declare in an affidavit that he "did not sign" the MAA and "did not agree to arbitrate."  *See id.* at ¶ 3.

While it is a close call, the Court concludes that Plaintiff Rocha's sworn statement that he did not sign the MAA creates a genuine issue of fact about whether he executed or adopted the electronic signature on that MAA.  The Court acknowledges that many of its sister courts have found that, absent corroborating evidence, conclusory denials of

---

Defendants' human resources software or policies and procedures that ensure that Plaintiff Rocha (as opposed to someone else) executed the electronic signature attached to his MAA.  *See generally doc. 53-1.*

this nature are insufficient to create a genuine issue of material fact about formation.

*See, e.g., Walker v. VXI Global Sols. LLC*, Case No. 1:19-cv-4846-MLB, 2021 WL 2525721, at

*5 (N.D. Ga. June 21, 2021); *Mitchell v. Cambridge Franchise Holdings, LLC*, 433 F. Supp. 3d

1064, 1069-71 (W.D. Ky. 2020).  The records those courts considered, though, included

not only electronically signed agreements but also evidence (other than the electronic

signature itself) attributing the electronic signature to its signatory.  *See, e.g., Walker v.

VXI Global Sols. LLC*, 2021 WL 2525721, *2 (employee had to log into employer's

computer system using her employee identification number and password to access

and sign the electronic agreement); *Mitchell*, 433 F. Supp. 3d at 1069 (employee could

only access and sign the agreement from a password-protected account).  The absence

of this evidence here leads the Court to find that a rationale factfinder could conclude

that Plaintiff Rocha did not execute or adopt the electronic signature on the MAA for

him in the record.[6]

---

[6] To the extent that the Court's reasoning here also applies to Plaintiff Martinez, who also denies signing the electronic MAA for him in the record, *see doc. 27-42* at 4; *doc. 37-10* at ¶ 2, the Court finds that Plaintiffs waived argument about the attributability of Plaintiff Martinez's electronic signature by conceding that he executed a MAA at oral argument, *see doc. 65* at 8, and not contesting the adequacy of Plaintiff Martinez's signature in their briefing, *cf. United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (deeming arguments not adequately briefed on appeal to be waived).

      iv.    WRITTEN MAA PLAINTIFFS: PLAINTIFFS WALTRIP, WINCKLER, OLIVAS, SANCHEZ, HULL, CORDERO-JAIME, HEISEY, MADRID, C. MORENO, SALAZAR, ANDREWS, GARCIA, AND TABORY

Express arbitration agreements exist between Defendants and each Written MAA Plaintiff.  Defendants offer circumstantial and direct evidence that each Written MAA Plaintiff formed an agreement to arbitrate.  The direct evidence is twofold.  First, the record contains a signature page for each Written MAA Plaintiff that bears either his signature or handwritten, printed name.  *See doc. 27-3* (Plaintiff Garcia); *doc. 27-7* (Plaintiff Tabory); *doc. 27-10* (Plaintiff Waltrip); *doc. 27-15* (Plaintiff Winckler); *doc. 27-19* (Plaintiff Olivas); *doc. 27-23* (Plaintiff Sanchez); *doc. 27-30* (Plaintiff Cordero-Jaime); *doc. 27-34* (Plaintiff Heisey); *doc. 27-38* (Plaintiff Madrid); *doc. 27-57* (Plaintiff C. Moreno); *doc. 27-61* (Plaintiff Hull); *doc. 27-76* (Plaintiff Salazar); *doc. 27-84* (Plaintiff Andrews). Except for the signatures, dates, and names printed in the signature area at the bottom of the page, the signature pages for Plaintiffs Waltrip, Winckler, Hull, Cordero-Jaime, Heisey, Madrid, C. Moreno, Salazar, Andrews, Garcia, and Tabory ("18-Clause Written MAA Plaintiffs") are identical to not only each other, but also the sixth page of the 18-Clause Written MAA in the record (*doc. 27-1*), which contains an agreement to arbitrate. *Compare docs. 27-3, 27-7, 27-10, 27-15, 27-30, 27-34, 27-38, 27-57, 27-61, 27-76, 27-84, with doc. 27-1* at 1-2, 6.  Similarly, except for the signatures, dates, and names printed in the signature area at the bottom of the page, the signature pages for Plaintiffs Olivas and Sanchez ("22-Clause Written MAA Plaintiffs") are identical to both each other and the

sixth page of the 22-Clause Written MAA in the record (*doc. 27-5*). *Compare docs 27-19,*

*27-23, with doc. 27-5* at 6. This 22-Clause MAA also contains an agreement to arbitrate,

*see doc. 27-5* at 1-2, albeit one whose language differs from that in the 18-Clause Written

MAA, *compare id., with doc. 27-1* at 1-2.

Second, the record contains a recreated copy of a MAA for each Written MAA

Plaintiff in which each Plaintiff's signature page replaces the blank signature page from

either the 18-Clause Written MAA (*doc. 27-1*), or the 22-Clause Written MAA (*doc. 27-5*).

*See doc. 53-1* at 7-12 (Plaintiff Cordero-Jaime); *id.* at 14-19 (Plaintiff Heisey); *id.* at 21-26

(Plaintiff Madrid); *id.* at 28-33 (Plaintiff Waltrip); *id.* at 35-40 (Plaintiff Winckler); *id.* at

42-47 (Plaintiff Olivas); *id.* at 49-54 (Plaintiff Sanchez); *id.* at 56-61 (Plaintiff Andrews); *id.*

at 63-68 (Plaintiff Garcia); *id.* at 70-75 (Plaintiff Hull); *id.* at 77-82 (Plaintiff C. Moreno);

*id.* at 84-89 (Plaintiff Salazar); *id.* at 91-96 (Plaintiff Tabory). Ms. Yancey, who has

"personal knowledge of [Defendants'] policies and procedures regarding the …

[MAA]," *see id.* at ¶ 3, declares that these recreated MAAs "are true and correct copies

of the complete [MAAs] as presented to [Written MAA] Plaintiffs … for physical

signature," *see id.* at ¶ 5, and "the complete agreements signed by [these] Plaintiffs … in

this action," *see id.* at ¶ 6. She further explains that "[i]t was [Defendants'] regular

practice to present the [MAAs] to employees as complete documents for review and

signature as part of the onboarding process [and] retain only the signature pages of

these agreements after employees reviewed, signed, and returned them to

[Defendants]." *Id*. The implication from Ms. Yancey's explanation is that the original MAAs signed by Written MAA Plaintiffs were lost or destroyed shortly after their hiring and onboarding. Since there is no evidence that Defendants lost or destroyed these MAAs in bad faith, the recreated copies of these MAAs are admissible. *See* Fed. R. Evid. 1004(a) (allowing for the admission of other evidence of the content of a writing if "all the originals are lost or destroyed, and not by the proponent acting in bad faith").

As for circumstantial evidence, akin to the circumstantial evidence for Plaintiff Carroll, the record evinces that Defendants had a regular policy of requiring employees to execute arbitration agreements during their hiring and onboarding and followed this policy as to all Written MAA Plaintiffs. *See doc. 27-2* at 3 (Plaintiff Garcia's employment application); *doc. 27-4* (Plaintiff Garcia's important handbook acknowledgment); *doc. 27-6* at 3 (Plaintiff Tabory's employment application); *doc. 27-8* (Plaintiff Tabory's important handbook acknowledgment); *doc. 27-12* (Plaintiff Waltrip's important handbook acknowledgment); *doc. 27-13* at 7 (Plaintiff Waltrip's employment application)*; doc. 27-14* (Plaintiff Waltrip's driver qualification checklist); *doc. 27-16* (Plaintiff Winckler's important handbook acknowledgment); *doc. 27-17* at 4 (Plaintiff Winckler's employment application); *doc. 27-18* (Plaintiff Winckler's driver qualification checklist); *doc. 27-20* (Plaintiff Olivas's important handbook acknowledgment); *doc. 27-22* (Plaintiff Olivas's driver qualification checklist); *doc. 27-24* (Plaintiff Sanchez's important handbook acknowledgment)*; doc. 27-26* (Plaintiff Sanchez's driver

qualification checklist); *doc. 27-31* (Plaintiff Cordero-Jaime's important handbook acknowledgment); *doc. 27-32* at 3 (Plaintiff Cordero-Jaime's employment application); *doc. 27-33* (Plaintiff Cordero-Jaime's driver qualification checklist); *doc. 27-35* (Plaintiff Heisey's important handbook acknowledgment); *doc. 27-36* at 7 (Plaintiff Heisey's employment application); *doc. 27-37* (Plaintiff Heisey's driver qualification checklist); *doc. 27-39* (Plaintiff Madrid's important handbook acknowledgment); *doc. 27-40* at 4 (Plaintiff Madrid's employment application); *doc. 27-41* (Plaintiff Madrid's driver qualification checklist); *doc. 27-58* (Plaintiff C. Moreno's important handbook acknowledgment); *doc. 27-59* at 3 (Plaintiff C. Moreno's employment application); *doc. 27-60* (Plaintiff C. Moreno's driver qualification checklist); *doc. 27-62* (Plaintiff Hull's important handbook acknowledgment; *doc. 27-63* at 5 (Plaintiff Hull's employment application); *doc. 27-64* (Plaintiff Hull's driver qualification checklist); *doc. 27-77* (Plaintiff Salazar's important handbook acknowledgment); *doc. 27-78* at 4 (Plaintiff Salazar's employment application); *doc. 27-79* (Plaintiff Salazar's driver qualification checklist); *doc. 27-83* at 6 (Plaintiff Andrews's employment application); *doc. 27-85* (Plaintiff Andrews's important handbook acknowledgment); *doc. 53-1* at ¶¶ 6, 12 (Ms. Yancey's declaration about Defendants' regular practices).[7]

---

[7] Unlike the other employment applications in the record, the applications for Plaintiffs Olivas and Sanchez do not contain any notification that employees will be required to agree to Defendants' dispute resolution procedure as a condition of employment.  *See doc. 27-21* (Plaintiff Olivas); *doc. 27-25* (Plaintiff Sanchez).  The record also does not contain driver qualification checklists for Plaintiffs Garcia, Andrews and Tabory.  The signature pages in the record for these Plaintiffs, though, are circumstantial evidence

Plaintiffs argue that the above direct evidence does not establish that that any Written MAA Plaintiff formed an arbitration agreement for four reasons: (i) the signature pages are unauthenticated hearsay, *see doc. 37* at 14-16; (ii) the signature pages for some of these Plaintiffs do not contain their signatures, *see id.* at 17-19; (iii) formatting differences between Plaintiffs' signature pages and signature pages in either the 18-Clause Written MAA (*doc. 27-1*) or the 22-Clause Written MAA (*doc. 27-5*) cast doubt about whether Plaintiffs' signature pages come from these MAAs, *see doc. 65* at 4-5, 9; and (iv) Ms. Yancey's declarations are insufficient to establish that the signature pages belong to these MAAs as she "has no personal knowledge of what agreements Plaintiffs signed," *see doc. 56* at 3; *doc. 65* at 4.

Each of these arguments fails.  Regarding the signature pages' authenticity, Ms. Yancey has declared that these pages "are true and correct copies of the documents they purport to be," *see doc. 53-1* at ¶ 4, based upon her "familiar[ity] with [Defendants'] employment records" and "personal knowledge of [Defendants'] policies and procedures regarding the … [MAA]," *id.* at ¶ 3.  These statements are sufficient to establish authenticity.  *See* Fed. R. Evid. P. 901(b)(1) (listing, as an example of authenticating evidence, the "[t]estimony of a [w]itness with [k]nowledge" that "an item is what it is claimed to be").

---

that Defendants followed their practice of requiring employees to form agreements to arbitrate during onboarding in these Plaintiffs' cases.

Regarding hearsay, the signature pages are not hearsay as to the formation of agreements to arbitrate. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801 advisory committee's note to 1972 rule proposal. One such statement is a "statement … affect[ing] the legal rights of the parties," *id.,* such as a statement that brings a contract into being, *see Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087-88 (10th Cir. 2001). Therefore, Written MAA Plaintiffs' signature pages are not hearsay as to the existence of agreements to arbitrate between them and Defendants.

Plaintiffs' argument about missing signatures also fails. The signature pages for Plaintiffs Garcia, Hull, Heisey, C. Moreno, Winckler, and Andrews contain these Plaintiffs' handwritten, printed names instead of their signatures. *See docs. 27-3, 27-15, 27-34, 27-57, 27-61, 27-84.* But for the purposes of contract formation there is no material difference between a handwritten signature and a handwritten, printed name: both manifest an intent to be bound. *See, e.g., Roberts v. Johnson*, 212 F.2d 672, 674 (10th Cir. 1954); *H&H Wholesale Servs., Inc. v. Kamstra Int'l, B.V.*, Case No. 2:17-cv-13422-LJM-APP, 2019 WL 2183127, at *4 (E.D. Mich. May 21, 2019); *Costanza v. Allstate Ins. Co.*, No. Civ.A. 02-1492, 2002 WL 31528447, at *2 (E.D. La. Nov. 12, 2002).

Plaintiffs' argument about formatting lacks support in the record. Plaintiffs direct the Court to a recreated MAA that Defendants provided as an exhibit in *Drasal* in

which Defendants purportedly replaced the signature page of a template MAA with the

*Drasal* plaintiff's signature page, *see doc. 37* at 17-18, just as they did here in the recreated

MAAs for Written MAA Plaintiffs, *see doc. 53-1* at ¶¶ 5-6.  Plaintiffs contend that the

signature page in the *Drasal* exhibit does not match the signature page from the

template MAA that it replaced since the previous page in that exhibit contains several

paragraphs that are repeated on the appended signature page.  *See doc. 37* at 17-18

(citing *doc. 37-1*).

However, the MAAs recreated for Written MAA Plaintiffs here contain no such

defects.  *See doc. 53-1* at 7-96.  Indeed, during oral argument, Plaintiffs conceded that the

signature page for Plaintiff Waltrip matches the last page of the 18-Clause Written MAA

(*doc. 27-1*).  *See doc. 65* at 9.  This concession applies equally to the signature pages for

Plaintiffs Winckler, Hull, Cordero-Jaime, Heisey, Madrid, C. Moreno, Salazar, Andrews,

Garcia, and Tabory, which, as noted earlier, *see infra* pp. 20-21, are identical to both that

of Plaintiff Waltrip and the sixth page of the 18-Clause Written MAA (*doc. 27-1*).  The

Court acknowledges that the resolution, font size, and/or ink saturation on many of

these Plaintiffs' signature pages differs from the sixth page of this MAA.  *Compare doc.*

*27-1* at 6, *with doc. 53-1* at 19, 33, 40, 61, 68, 75, 89, 96.  These signature pages are copies,

though.  *See doc. 53-1* at ¶ 4.  So, the Court does not find these formatting differences

sufficient for a rational factfinder to conclude that the signature page for any 18-Clause

Written MAA Plaintiff is not from the 18-Clause Written MAA (*doc. 27-1*).

As for Plaintiffs Olivas and Sanchez, the Court notes that the location of the signature blocks and two acknowledgement paragraphs on these Plaintiffs' signature pages differs slightly from the location of this text on the sixth page of 22-Clause Written MAA (*doc. 27-5*).  *Compare doc. 27-19* (locating the paragraphs and signature blocks in the top half of the page), *and doc. 27-23* (same), *with doc. 27-5* at 6 (locating this text in the center of the page).  The Court, though, does not consider this minor formatting difference sufficient for a rational factfinder to conclude that Plaintiffs Olivas and Sanchez's signature pages are not from the 22-Clause Written MAA.

Plaintiffs' final argument about the insufficiency of Defendants' evidence—that Ms. Yancey lacks the personal knowledge to testify about the agreements Written MAA Plaintiffs signed—also fails.  Ms. Yancey lacks personal knowledge about what agreements any Plaintiff executed, as she was not present when Plaintiffs executed them.  She does, though, have personal knowledge about Defendants' policies and procedures regarding MAAs and onboarding.  *See doc. 53-1* at ¶ 3.  One of these policies, as noted earlier, was "present[ing] the [MAAs] to employees as complete documents for review and signature as part of the onboarding process" and "retain[ing] only the signature pages of these agreements after employees reviewed, signed, and returned them."  *Id.* at ¶ 6.  The Court therefore understands Ms. Yancey's other statement that these recreated MAAs "are true and correct copies of the complete [MAAs] as presented to [Written MAA] Plaintiffs … for physical signature," *doc. 53-1* at ¶ 5, to mean that the

MAAs recreated for Written MAA Plaintiffs are consistent with the MAAs that would have been presented to these Plaintiffs under the policies and practices existing at this time. *See* Fed. R. Evid. 406 ("Evidence of … an organization's routine practice may be admitted to prove that on a particular occasion the … organization acted in accordance with the … routine practice … regardless of whether it is corroborated or whether there was an eyewitness.").

In addition to disputing the adequacy of Defendants' evidence, Written MAA Plaintiffs attempt to create factual disputes about the existence of arbitration agreements through declarations. These attempts also fail. Plaintiffs Waltrip, Winckler, Olivas, Sanchez, Cordero-Jaime, Heisey, Madrid, C. Moreno, Andrews, and Garcia declare that they "have no recollection of the last page of the [MAA] attached to the Motion or any recollection of any part of this agreement" (including "paragraphs 1 through 16 of the [MAA]" except as to Plaintiffs Olivas and Sanchez). *See doc. 37-2* at ¶¶ 2-3 (Plaintiff Waltrip); *doc. 37-3* at ¶¶ 3, 5 (Plaintiff Winckler); *doc. 37-4* at ¶¶ 3-4 (Plaintiff Olivas); *doc. 37-5* at ¶¶ 2-3 (Plaintiff Sanchez); *doc. 37-7* ¶¶ 2-3 (Plaintiff Cordero-Jaime); *doc. 37-8* at ¶¶ 2, 4 (Plaintiff Heisey); *doc. 37-9* at ¶¶ 2, 4 (Plaintiff Madrid); *doc. 37-13* at ¶¶ 2, 4 (Plaintiff C. Moreno); *doc. 37-18* at ¶ 4 (Plaintiff Andrews); *doc. 37-19* at ¶ 2, 4 (Plaintiff Garcia). As noted earlier, a nonmovant's present inability to recall executing an arbitration agreement or the terms of that agreement does not create

a genuine issue of material fact as to that agreement's formation.  *See e.g.*, *Walker v. Dillard's*, 2019 WL 1283001, at *3.

Plaintiffs Waltrip, Winckler, Cordero-Jaime, Heisey, Madrid, C. Moreno, Hull, Andrews, and Garcia also state that they "did not agree to paragraphs 1 through 16 of the [MAA]."  *See doc. 37-2* at ¶ 4; *doc. 37-3* at ¶ 6; *doc. 37-7* at ¶ 4; *doc. 37-8* at ¶ 5; *doc. 37-9* at ¶ 5; *doc. 37-13* at ¶ 5; *doc. 37-14* at ¶ 5; *doc. 37-18* at ¶ 5; *doc. 37-19* at ¶ 5.  Similarly, Plaintiffs Winckler, Heisey, Madrid, C. Moreno, Hull, Andrews, and Garcia also declare that they "did not sign [the MAA] nor did [they] agree to arbitrate."  *See doc. 37-3* at ¶ 4; *doc. 37-8* at ¶ 3; *doc. 37-9* at ¶ 3; *doc. 37-13* at ¶ 3; *doc. 37-14* at ¶ 3; *doc. 37-18* at ¶ 3; *doc. 37-19* at ¶ 3.  As noted earlier, conclusory denials like these ones generally do not create a genuine issue of material fact about contract formation where a contract bearing the denier's signature or handwritten, printed name is also in the record, the authenticity of the signature or handwritten, printed name is not disputed, and the denier offers no evidence corroborating his denial.  *See, e.g.*, *Walker v. VXI Global Sols.*, 2021 WL 2525721, at *4-5; *Mitchell*, 433 F. Supp. 3d at 1070-71; *cf. Credit Acceptance Corp. v. Ledbetter*, CIVIL ACTION NO: 1:16CV70-DAS, 2016 WL 4688867, at *3 (N.D. Miss. Sept. 7, 2016) (finding a genuine factual issue about formation where an employee unequivocally denied signing the document containing the arbitration provision and provided evidence of her genuine signature to show that the signature on the document was not hers).

v.   ELECTRONIC MAA PLAINTIFFS: PLAINTIFFS COOLEY, DELZOTTO,
MARTINEZ, M. MORENO, OGIER, AND YOUNG

Finally, express arbitration agreements exist between Defendants and each

Electronic MAA Plaintiff.  Defendants offer direct evidence that each of Plaintiffs

Cooley, Delzotto, Martinez, M. Moreno, Ogier, and Young executed an agreement to

arbitrate: true and correct copies of a complete MAA for each Electronic MAA Plaintiff

that bears his electronic signature and contains a section entitled "Agreement to

Arbitrate; Designated Claims."  *See doc. 27-27* at 1, 3 (Plaintiff Cooley); *doc. 27-42* at 1, 4

(Plaintiff Martinez); *doc. 27-46* at 1, 4 (Plaintiff M. Moreno); *doc. 26-54* at 1, 3 (Plaintiff

Young); *doc. 27-68* at 1, 4 (Plaintiff Delzotto); *doc. 27-72* at 1, 4 (Plaintiff Ogier); *doc. 53-1*

at ¶ 7 (declaration of Ms. Yancey authenticating these MAAs).[8]  Arbitration agreements

like these that purportedly bear the nonmovants' electronic signatures are sufficient

evidence to make a *prima facie* case that the parties have an agreement to arbitrate.  *See,*

*e.g.*, *Walker v. VXI Global Sols.*, 2021 WL 2525721, at *4; *Walker v. Dillard's,* 2019 WL

1283001, at *3; *Smith v. Rent-A-Center, Inc.*, 1:18-CV-01351 LJO JLT, 2019 WL 1294443, at

*4 (E.D. Cal. Mar. 21, 2019).  At oral argument, Plaintiffs conceded the existence of

---

[8] The Agreement to Arbitrate Clauses in the MAAs signed by Electronic MAA Plaintiffs differ in one respect.  The clauses in the MAAs signed by Plaintiffs Cooley and Young ("PFJ Electronic MAA Plaintiffs") use the abbreviation PFJ to refer to Defendants.  *See doc. 27-27* at 1 ("[A]ll references to PFJ in this Agreement shall include Pilot Travel Centers LLC and all of its subsidiary and affiliated entities."); *doc. 27-54* at 1 (same).  The clauses in the MAAs signed by Plaintiffs Delzotto, Martinez, M. Moreno, and Ogier ("PILOT Electronic MAA Plaintiffs") use the term PILOT to refer to Defendants.  *See doc. 27-42* at 1 ("[A]ll references to PILOT in this Agreement shall include Pilot Corporation, Pilot Travel Centers LLC and all of their subsidiaries and affiliated entities."); *doc. 27-46* at 1 (same); *doc. 27-68* at 1 (same); *doc. 27-72* at 1 (same).

arbitration agreements between Defendants and each Electronic MAA Plaintiff.  *See doc. 65* at 8.

    2.  *The Arbitrator, Not the Court, Decides What is Arbitrable*

Having addressed formation, the Court next confronts the issue of who decides which disputes between Defendants and Written MAA/Electronic MAA Plaintiffs are subject to arbitration: the Court or an arbitrator.  It concludes that each of the arbitration agreements executed by four subgroups of these Plaintiffs delegates that decision to the arbitrator.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."  *Id.* at 70.  "[C]ourts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'"  *Belnap*, 844 F.3d at 1281 (cleaned up) (quoting *First Options*, 514 U.S. at 944).  Based on the evidence in the record, each Plaintiff who executed an arbitration agreement also agreed to delegate decisions about arbitrability to the arbitrator.

i.   PFJ Electronic MAA Plaintiffs: Plaintiffs Cooley and Young

The arbitrator, not the Court, determines the arbitrability of disputes between

Defendants and each of Plaintiffs Cooley and Young.  Circuit Courts of Appeal

unanimously agree that incorporating American Arbitration Association ("AAA")

Rules into an agreement is clear and unmistakable evidence of an agreement to arbitrate

arbitrability.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Petrofac, Inc.*

*v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-*

*Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11

(1st Cir. 2009); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th

Cir. 2005); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d. Cir. 2005).

Some courts have suggested that the Tenth Circuit is an outlier.  *See Oracle Am.,*

*Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (citing *Riley Mfg. Co. v.*

*Anchor Glass Container Corp.*, 157 F.3d 775, 777 & n.1, 780 (10th Cir. 1998), for the

proposition that, in the Tenth Circuit, incorporating AAA Rules is not clear and

unmistakable evidence that the parties agreed to arbitrate arbitrability); *Fallo*, 559 F.3d

at 878 (same).  The Tenth Circuit, though, clarified in *Belnap v. Iasis Healthcare*, 844 F.3d

1272 (10th Cir. 2017), that *Riley* should not be read beyond its facts as the AAA Rules in

effect at that time did not include a provision concerning the arbitration of arbitrability.

*See Belnap*, 844 F.3d at 1284.  Since *Belnap*, the Tenth Circuit has also expressly held that

"incorporat[ing] the AAA rules into a broad arbitration agreement … clearly and

unmistakably evinces [an] intent to arbitrate arbitrability." *Dish Network LLC v. Ray*, 900

F.3d 1240, 1246 (10th Cir. 2018).

Here, the MAAs between Defendants and each of Plaintiffs Cooley and Young

provide in a section entitled "Agreement to Arbitrate; Designated Claims" that the

parties "consent to the resolution of all disputes covered by this Agreement in

accordance with AAA Rules." *See Doc. 27-27* at 1 (Plaintiff Cooley); *doc. 27-54* at 1

(Plaintiff Young). Plaintiffs contend that incorporations of AAA rules are not clear and

unmistakable evidence of an agreement to arbitrate arbitrability since, unlike the text of

the JAMS rules at issue in *Belnap*, the text of the AAA rules does not give the arbitrator

exclusive jurisdiction over arbitrability. *See doc. 65* at 5, 10. The text of the AAA rules

applicable to the parties' agreement is subject to that reading. *See* Am. Arb. Ass'n,

Employment Arbitration Rules and Mediation Procedures 6(a) (2009) ("[T]he arbitrator

shall have the power to rule on his or her own jurisdiction, including any objections

with respect to the existence, scope or validity of the arbitration agreement."). The

Tenth Circuit, though, considered the very same text in *Dish Network* when ruling that

incorporating AAA rules is clear and unmistakable evidence of an intent to arbitrate

arbitrability. *See* 900 F.3d at 1245 (citing Am. Arb. Ass'n, Employment Arbitration Rules

and Mediation Procedures 6(a) (2009)). *Dish Network*, therefore, forecloses Plaintiffs'

argument and requires an arbitrator, not the Court, to determine the arbitrability of

disputes between Defendants and each of Plaintiffs Cooley and Young. *See id.* at 1246.

ii.    PILOT ELECTRONIC MAA PLAINTIFFS: PLAINTIFFS DELZOTTO, MARTINEZ, M. MORENO, AND OGIER

The arbitrator, not the Court, also determines the arbitrability of disputes between Defendants and each PILOT Electronic MAA Plaintiff for two reasons.  First, like Plaintiffs Cooley and Young, the MAAs between Defendants and Plaintiffs Delzotto, Martinez, M. Moreno, and Ogier provide that the parties "consent to the resolution of all disputes covered by this Agreement in accordance with AAA Rules." *See doc. 27-42* at 1 (Plaintiff Martinez); *doc. 27-46* at 1 (Plaintiff M. Moreno); *doc. 27-68* at 1 (Plaintiff Delzotto); *doc. 27-72* at 1 (Plaintiff Ogier).

Second, these Plaintiffs' MAAs state that the parties "agree that any dispute, controversy, or claim arising out of, relating to or in connection with this contract, including the breach, termination or validity therefore, shall be finally resolved by arbitration" and that "[t]he [arbitration] tribunal shall have the power to rule on any challenge to its own jurisdiction or to the validity or enforceability of any portion of the agreement to arbitrate."  *See doc. 27-42* at 2; *doc. 27-46* at 2; *doc. 27-68* at 2; *doc. 27-72* at 2. These statements manifest a clear and unmistakable intent to arbitrate arbitrability.  *See, e.g., Deardorff v. Cellular Sales of Knoxville, Inc.*, CIVIL ACTION NO. 19-2642-KSM, 2022 WL 407396, at *8 (E.D. Pa. Feb. 9, 2022) (gathering cases for the proposition that "expressly stating that issues regarding the validity or enforceability of an arbitration agreement shall be determined by an arbitrator is likely sufficient" "to demonstrate clear and unmistakable intent to delegate questions of arbitrability").

     iii.    18-CLAUSE WRITTEN MAA PLAINTIFFS: PLAINTIFFS WALTRIP, WINCKLER, HULL, CORDERO JAIME, HEISEY, MADRID, C. MORENO, SALAZAR, ANDREWS, GARCIA, AND TABORY

An arbitrator, not the Court, also determines the arbitrability of disputes between Defendants and each 18-Clause Written MAA Plaintiff for two reasons.  First, like the MMAs for both subsets of Electronic MAA Plaintiffs, the 18-Clause Written MAA incorporates AAA Rules in a section entitled "Agreement to Arbitrate; Designated Claims."  *See doc. 27-1* at 1 ("Except as otherwise provided in this Agreement, [Defendants] and Employee hereby consent to the resolution of all disputes covered by this Agreement in accordance with the AAA Rules.").  Second, the 18-Clause Written MAA also "requires all [disputes that otherwise would be resolved in a court of law or before a forum other than arbitration] to be resolved only by an arbitrator through final and binding arbitration" and explains that "[s]uch disputes include without limitation disputes arising out of or relating to the interpretation or application of this Agreement, including enforceability, revocability, or validity of the Agreement or any portion of the Agreement."  *Id.* at 2.

Citing *Perez v. Qwest Corp.*, 883 F. Supp. 2d 1095, 1114 (D.N.M. 2012), Plaintiffs contend that this language is insufficient to demonstrate a clear and unmistakable intent to arbitrate.  *See doc. 37* at 22-23; *doc. 65* at 9-10.  However, the language the *Perez* court found insufficient to establish an agreement to arbitrate arbitrability was an agreement to arbitrate "[a]ny claim, controversy or dispute between [the parties], unless otherwise

covered by a collective bargaining agreement, whether sounding in contract, statute, tort, fraud, misrepresentation, discrimination or any other legal theory, including, but not limited to, disputes relating to the interpretation of this Attachment." 883 F. Supp. 2d at 1114 (emphasis omitted). That language lacks the language subjecting disputes about the agreement's validity and enforceability to arbitration that is present here. *Cf. doc. 27-1* at 2. As noted earlier, courts have found this language clear and unmistakable evidence of intent to arbitrate arbitrability. *See, e.g., Deardorff, Inc.*, 2022 WL 407396, at *8.

### iv.   22-CLAUSE MAA WRITTEN MAA PLAINTIFFS: PLAINTIFFS OLIVAS AND SANCHEZ

Finally, an arbitrator, not the Court, also determines the arbitrability of disputes between Defendants and each of Plaintiffs Olivas and Sanchez. The seventeenth clause of the 22-Clause Written MAA provides that "the Arbitrator has exclusive authority to resolve any dispute relating to the applicability or enforceability of this Agreement." *Id.* at 4. This language is clear and unmistakable evidence of intent to arbitrate arbitrability. *See, e.g., Artis v. Lyon Shipyard, Inc.*, Civil No. 2:17cv595, 2018 WL 2013073, at *2 (E.D. Va. Apr. 26, 2018); *James v. Client Servs., Inc.*, No. 14-2480-JAR, 2015 WL

3649473, at *3 (D. Kan. June 11, 2015); *Zachary v. Countrywide Fin. Corp.*, Civil Action H-08-0214, 2008 WL 11490471, at *3 (S.D. Tex. Oct. 7, 2008).[9]

   3.   *Parties' Agreements to Arbitrate Arbitrability Are Not Unconscionable*

Moving on to the enforceability of the parties' agreements to arbitrate arbitrability,[10] none of their agreements are unconscionable under New Mexico law. "[U]nconscionability can be analyzed from both procedural and substantive perspectives." *Cordova v. World Fin. Corp. of N.M.*, 208 P.3d 901, 907 (N.M. 2009). "While there is a greater likelihood of a contract[] being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability, there is no absolute requirement … that both must be present to the same degree or that they both be present at all." *Strausberg v. Laurel Healthcare Providers, LCC*, 304 P.3d 409, 417 (N.M. 2013). The two forms of unconscionability "often have an inverse relationship. The more substantively oppressive a contract term, the less

---

[9] Unlike the other MAAs in the record, the 22-Clause Witten MAA does not unambiguously incorporate AAA Rules. *See doc. 27-5* at 2 (agreeing "that any disputes shall be held … under the American Rules for Arbitration of Employment Disputes"); *doc. 27-5* at 3 (providing that "[a]rbitrations conducted pursuant to this Agreement shall be conducted in accordance with the procedures set forth in the Rules for Arbitration (the 'Rules'), except where the Rules conflict with this Agreement, in which case the terms of this Agreement shall govern."); *cf. doc. 27-5* at 1 (incorporating AAA rules for mediation). Defendants and Plaintiffs Olivas and Sanchez could have intended for the phrases "Rules for Arbitration" and "American Rules for Arbitration of Employment Disputes" to refer AAA Rules, as the Court's research has identified no arbitration rules bearing these names. Unfortunately, Defendants have not provided any guidance on this matter. In any event, misidentifying the AAA Rules in an incorporation is not clear and unmistakable evidence of an intent to arbitrate arbitrability.

[10] Where an arbitration agreement contains an agreement to arbitrate arbitrability, only the unconscionability of the agreement to arbitrate arbitrability is before the Court. *See Rent-A-Center, W.*, 561 U.S. at 73. The unconscionability of the parties' overall arbitration agreements is a matter for the arbitrator.

procedural unconscionability may be required for a court to conclude that the offending term is unenforceable." *Cordova*, 208 P.3d at 908. Plaintiffs, as "the part[ies] alleging unconscionability in this case, bear[] the burden of proof." *See Strausberg* 304 P.3d at 419. They do not carry it.

i. THE AGREEMENTS TO ARBITRATE ARBITRABILITY ARE NOT SUBSTANTIVELY UNCONSCIONABLE

None of the agreements to arbitrate arbitrability—be they the incorporations of AAA Rules or specific, express delegating provisions—are substantively unconscionable. Substantive unconscionability "concerns the legality and fairness of the contract terms themselves [and] focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." *Cordova*, 208 P.3d at 907. Substantively unconscionable contract provisions include those that violate New Mexico public policy, *see Fiser v. Dell Comput. Corp.*, 188 P.3d 1215, 1221 (N.M. 2008), as well as those that "unreasonably benefit one party over another," *Cordova*, 208 P.3d at 908.

Plaintiffs contend the agreements to arbitrate arbitrability are unconscionable because they unreasonably benefit Defendants over them by exempting certain claims and proceedings from arbitration. *See doc. 37* at 29-31; *doc. 65* at 10-11. The Court analyzes claims of unconscionability arising from unreasonable benefit in two steps. *See*

*Peavy ex rel. Peavy v. Skilled Healthcare Grp., Inc.*, 470 P.3d 218, 224 (N.M. 2020).  At step one, the Court determines whether the provisions of an arbitration agreement are unlawful or unfair on their face.  *Id.*  Provisions that "exclude[] the drafting party's likeliest claims from arbitration while subjecting the non-drafting party's likeliest claims to arbitration" are facially one-sided and presumably unreasonable.  *Id.*  At step two, if the provisions are facially one-sided, the Court allows the drafting party to rebut their presumed unconscionability by presenting evidence that they are fair and reasonable. *Id.*  Each of the arbitration agreements in the record fails step one; none of them is unlawful or unfair on its face.

## a.  The Agreement to Arbitrate Arbitrability in the 22-Clause Written MAA Is Not Substantively Unconscionable

The agreement to arbitrate arbitrability in the 22-Clause Written MAA executed by Plaintiffs Olivas and Sanchez is not one-sided or otherwise unfair on its face.  The agreement requires the arbitrator to arbitrate the arbitrability of both sides' disputes. *See doc. 27-5* at 1 (subjecting to arbitration both claims that an employee may have against Defendants and Defendants may have against the employee).  The agreement does carve out several claims from arbitration, specifically claims for workers' compensation or unemployment compensation benefits; loan default; claims arising from employee pension or benefit plans; and claims for injunctive and/or other equitable relief related to intellectual property violations, unfair competition, and/or the

use and/or unauthorized disclosure of trade secrets or confidential information.  *See id.*

at 2-3.  The Court, though, does not consider substantive unconscionability arising from

these carve outs as Plaintiffs make no arguments about them.  *Cf. United States v. Walker*,

918 F.3d 1134, 1151 (10th Cir. 2019) (deeming arguments not adequately briefed on

appeal to be waived).

Instead, Plaintiffs argue that the agreement to arbitrate arbitrability in the 22-

Clause Written MAA is substantively unconscionable as it subjects Plaintiffs Olivas and

Sanchez's claims to arbitration while carving out for the Court the enforceability of class

action waivers and a shortened statute of limitations.  *See doc. 37* at 29-31 & n.6; *doc. 65*

at 4, 10.  This argument, though, cannot be squared with the terms of this MAA.  This

MAA does not contain a class action waiver, let alone one whose enforcement is the

purview of the Court rather than the arbitrator.  *See generally doc. 27-5*.  This MAA does

contain one-year statutes of limitations and repose.  *See id.* at 3.  However, it provides

that the forum for enforcing theses statutes is arbitration, not the Court.  *See id.* at 2.

Defendants' attempt to have the Court enforce these statutes in violation of the plain

language of the agreement, *see doc. 27* at 19, does not transform MAA's plain language.

As the 22-Clause Written MAA lacks both the one-sided carve outs alleged by Plaintiffs,

Plaintiffs do not bear their burden of establishing that the agreement to arbitrate

arbitrability therein is facially one-sided or otherwise unfair.[11]

>    b.  The Agreements to Arbitrate Arbitrability in the Other MAAs Are
>        Not Substantively Unconscionable

None of the other agreements to arbitrate arbitrability in the three other MAAs in

the record are facially one-sided or otherwise unfair, either.  Like the agreement in the

22-Clause Written MAA, each of these agreements to arbitrate arbitrability is bilateral.

*See doc. 27-1* at 1; *doc. 27-27* at 1; *doc. 27-42* at 1; *doc. 27-46* at 1; *doc. 27-54* at 1; *doc. 27-68* at

1; *doc. 27-72* at 1.  These agreements carve out several issues from arbitration: the

enforcement of their class action waivers; claims for workers' compensation, state

disability, or unemployment benefits; claims resulting from default under a loan

agreement; and claims arising from an employee benefit or pension plan.  *See doc. 27-1*

at 3-4; *doc. 27-27* at 2; *doc. 27-42* at 2; *doc. 27-46* at 2; *doc. 27-54* at 2; *doc. 27-68* at 2; *doc. 27-*

*72* at 2.

Plaintiffs contend the carve outs for the enforcement of the class action waivers

make the agreements to arbitrate arbitrability facially one-sided since they exempt from

arbitration a defense more likely to be raised by Defendants, the stronger parties.  *See*

*doc. 37* at 29-31; *doc. 65* at 10-11.  Their contention, though, elides the distinction between

---

[11] Plaintiffs also argue that statutes of limitations and repose provision in the 22-Clause Written MAA violates *Sanchez v. Nitro-Lift Technologies, LCCLLC*, 762 F.3d 1139 (10th Cir. 2014), by abridging substantive FLSA rights.  *See doc. 37* at 31 n.6; *doc. 65* at 10.  However, this provision's enforceability and its severability from the parties' overall agreement are matters for the arbitrator, not the Court, to decide.

a substantive claim and the enforcement of a procedural rule about bringing such a

claim.  With one exception, the one-sided carve outs that New Mexico courts have

found substantively unconscionable have been carve outs for substantive claims.  *See,*

*e.g.*, *Peavy ex rel. Peavy*, 470 P.3d at 220, 226 (exempting a nursing home's claims for

collections and discharge from arbitration while subjecting residents' claims to

arbitration); *Rivera v. Am. Gen. Fin. Servs., Inc.*, 259 P.3d 803, 818-19 (N.M. 2011)

(exempting a creditor's claims for foreclosure and repossession from arbitration while

subjecting the barrowers claims to arbitration); *Cordova,* 208 P.3d at 908-10 (same).

*Padilla v. State Farm Mutual Automobile Insurance Company*, 68 P.3d 901 (N.M.

2003), is the exception.  There, an arbitration agreement between an insurer and an

insured "provided for mandatory arbitration, which would be binding on both parties

for any award of damages that [did] not exceed [certain] limits" and that "awards over

this amount [would be] subject to de novo appeal by either party."  68 P.3d at 902.  The

New Mexico Supreme Court found the appeal carve out substantively unconscionable

for "contraven[ing] the policies underlying [New Mexico's] uninsured motorist

statute," particularly "the statutory goal of placing the insured in the same position for

the recovery of damages as he or she would have been in had the tortfeasor carried

liability insurance."  *See id.* at 905-06.  In its analysis, the New Mexico Supreme Court

noted that this carve out, while bilateral, "unreasonably benefit[ed] the insurer over an

insured" for two reasons: (i) a finding in favor of the insurer on the issue of liability was

not subject to de novo appeal, while a finding in favor of the insured could be if damages exceed certain amounts; and (ii) both parties were bound by a low award, which an insurer is unlikely to appeal, but not a high award, which an insurer is more likely to appeal. *Id.* at 905.

*Padilla,* though, is not the only case where the New Mexico Supreme Court has considered substantive unconscionability arising from a procedural carve out. *See Dalton v. Santander Consumer USA, Inc.*, 385 P.3d 619, 624-25 (N.M. 2016). In *Dalton*, an arbitration clause required the parties to arbitrate all claims and disputes except, *inter alia,* those within the jurisdiction of small claims court, i.e., claims not exceeding $10,000. 385 P.3d at 620-21. Analyzing unconscionability arising from this small claims carve out, the New Mexico Supreme Court distinguished *Padilla*, *Cordova*, and *Rivera* for having "little ambiguity as to the one-sided operation of the examined provision or the exclusive benefits that inured only to the drafting party." *Id.* at 624. It also rejected the notion that the small claims carve out operated in an unfairly one-sided manner in practice by allowing the stronger party to pursue its most likely claims in court (due to their small values) but barring the other party from doing the same for his most likely claims (due to their higher values). *Id.* Then, it held that the carve out was not facially one-sided because it allowed "both parties … complete access to small claims proceedings, even if one party is substantially more likely to bring small claims actions." *Id*.

43

The carve out for the enforcement of the class action waiver here is more akin to the procedural carve out at issue in *Dalton* than the one at issue in *Padilla*.  Like the small claims carve out in *Dalton*, the carve out for enforcing the class action waiver is bilateral on its face—both Plaintiffs and Defendants must enforce the class action waiver in Court rather than in arbitration.  Admittingly, it is difficult for the Court to imagine Defendants initiating and attempting to arbitrate a dispute against a class of employees, the precondition for Plaintiffs seeking court enforcement of the class action waiver.  But the likelihood that Defendants will seek court enforcement of this waiver more often than Plaintiffs does not make the carve out for enforcing this waiver in court facially one-sided.  *Cf. Dalton*, 385 P.3d at 624 (holding that the substantial likelihood that one party would pursue more small claims than another did not render their arbitration agreement facially one sided for carving out such claims from arbitration).

The carve out for the enforcement of the class action waiver is also closer to the small claims carve out in *Dalton* than to the appeal carve out in *Padilla* since any exclusive benefit that Defendants inure from having the Court, rather than the arbitrator, enforce this waiver is ambiguous.  *See id.* (holding that the small claims carve out was not unconscionable because, *inter alia*, it did not unambiguously benefit the drafting party alone); *cf. Padilla*, 68 P.3d at 905-06 (holding that the appeal carve out unreasonably benefited the insurer over the insured because it provided a mechanism for the former, but not the latter, to obtain judicial review of adverse arbitration results).

44

It is far from obvious what benefit Defendant gains by having a court, rather than the arbitrator, enforce the class action waivers.  It is well settled that bilateral class action waivers are not substantively unconscionable.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018).  Moreover, even if other grounds existed for not enforcing the waivers, class arbitration would still be precluded since the MAAs contain no provisions authorizing it.  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).  And while not enforcing the class action waivers could void the agreements to arbitrate arbitrability in their entirety if the adjudicating forum found the waivers non-severable from the rest of the agreements (notwithstanding their severability clauses), it is not apparent to the Court that courts are so less likely to do so than arbitrators that the benefit of having courts enforce the class action waivers is unambiguous.

ii.    THE DELEGATION CLAUSES ARE NOT PROCEDURALLY UNCONSCIONABLE

None of the agreements to arbitrate arbitrability—be they the incorporations of AAA Rules or specific, express delegating provisions—is procedurally unconscionable. Procedural unconscionability considers "inequality in the contract formation."  *Hunt v. Rio at Rust Ctr., LLC*, 495 P.3d 634, 641 (N.M. Ct. App. 2021).  It "goes beyond the mere facial analysis of the contract and examines the particular factual circumstances surrounding the formation of the contract, including the relative bargaining strength,

sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." *Cordova*, 208 P.3d at 907-08; *see also Hunt*, 495 P.3d at 643 ("In analyzing whether a contract or a term in a contract is procedurally unconscionable, New Mexico courts consider several factors, including the use of high pressure tactics, the relative scarcity of the subject matter of the contract, and the relative education, sophistication and wealth of the parties." (quoting *City of Raton v. Arkansas River Power Auth.*, 760 F. Supp. 2d 1132, 1154 (D.N.M. 2009))).

"When assessing procedural unconscionability, courts should [also] consider whether the contract is one of adhesion." *Rivera*, 259 P.3d at 817. Adhesion contracts have three elements: (i) "the agreement [takes] the form of a standardized contract prepared or adopted by one party for the acceptance of the other"; (ii) "the party proffering the standardized contract must enjoy a superior bargaining position because the weaker party virtually cannot avoid doing business under the particular contract terms"; and (iii) "the contract must be offered to the weaker party on a take-it-or-leave-it basis, without opportunity for bargaining." *Guthmann v. LaVida Llena*, 709 P.2d 675, 678 (N.M. 1985), *abrogated on other grounds by Cordova*, 208 P.3d at 909-10. Adhesion contracts, though, are not procedurally unconscionable *per se* but rather only "when the terms are patently unfair to the weaker party." *Rivera*, 259 P.3d at 817. The agreements to arbitrate arbitrability at issue here are not patently unfair to Plaintiffs for the same

reasons that they are not facially one-sided.  Therefore, even if these agreements are

adhesion contracts, they are not unconscionable adhesion contracts.

As for general procedural unconscionability, the evidence in the record, even

when construed most favorably to Plaintiffs, does not meet this high bar.  "A contract is

procedurally unconscionable 'only where the inequality is so gross that one party's

choice is effectively non-existent.'"  *Hunt*, 495 P.3d at 641-42 (quoting *Guthmann*, 709

P.2d at 679).  The evidence in the record, even when viewed most favorably to Plaintiffs,

is insufficient for a rational factfinder to find that Plaintiffs had no choice but to form an

agreement to arbitrate arbitrability with Defendants.  The only evidence for procedural

unfairness is Plaintiffs' assertions that they each did not have "a meaningful

opportunity to confer with an attorney of [their] choosing regarding arbitration" before

executing that agreement.  *See doc. 37-2* at ¶ 9; *doc. 37-3* at ¶ 8; *doc. 37-4* at ¶ 6; *doc. 37-5* at

¶ 7; *doc. 37-6* at ¶ 5; *doc. 37-7* at ¶ 9; *doc. 37-8* at ¶ 10; *doc. 37-9* at ¶ 10; *doc. 37-10* at ¶ 8;

*doc. 37-11* at ¶ 7; *doc. 37-13* at ¶ 10; *doc. 37-14* at ¶ 10; *doc. 37-16* at ¶ 5; *doc. 37-17* at ¶ 6;

*doc. 37-18* at ¶ 8; *doc. 37-19* at ¶ 8.  Lack of opportunity to consult an attorney before

forming an agreement, however, is not itself sufficient to render that agreement

procedurally unconscionable (despite being relevant to the inquiry).  *See, e.g., Sonico v.*

*Charter Comm'ns, LLC*, Case No. 19-cv-01842-BAS-LL, 2021 WL 268637, at *10 (S.D. Cal.

Jan. 27, 2021) (applying California law); *Bufford v. VXI Global Sols., LLC*, No. CV-20-

00253-TUC-RCC, 2021 WL 229240, at *4-5 (D. Ariz. Jan. 22, 2021) (applying Arizona law).

Plaintiffs offer no evidence that they were rushed into executing their agreements to arbitrate arbitrability or that they were under duress when doing so. *Cf.* *Hunt*, 495 P.3d at 642-44 (holding that an arbitration agreement between a patient and a rehabilitation facility was unenforceable due to procedural unconscionability where the patient had to be admitted into a facility to avoid a gap in admission status, other facilities were not accepting admissions, and the patient's power of attorney only had fifteen minutes to review and execute the thirty-page agreement). Therefore, Plaintiffs have not shown that the circumstances surrounding their formation of agreements to arbitrate arbitrability were so unfair as to be procedurally unconscionable.

## B. CLASS ARBITRATION

Turing to the issue of whether Plaintiffs must arbitrate as individuals, the Court compels Electronic MAA Plaintiffs and 18-Clause Written MAA Plaintiffs to arbitrate their claims individually and reserves the issue of whether Plaintiffs Olivas and Sanchez may arbitrate their claims as a class to the arbitrator. As for Plaintiffs Carroll and Rocha, it defers judgment on whether any arbitration that these Plaintiffs must pursue is individualized as well as the forum that makes that decision.

1. *Plaintiffs Olivas and Sanchez*

The Court leaves the issue of whether Plaintiffs Olivas and Sanchez may arbitrate

their claims as a class for the arbitrator.  The arbitration agreements for Plaintiffs Olivas

and Sanchez do not contain a class action waiver or otherwise discuss class arbitration.

*See generally doc. 27-5.*  An agreement to participate in class arbitration may not be

inferred from silence.  *See Stolt-Nielsen*, 559 U.S. at 684-85.  The Tenth Circuit, though,

has held an agreement to arbitrate arbitrability (as manifested by the incorporation of

AAA Rules) includes an agreement to arbitrate whether an arbitration agreement

authorizes class arbitration.  *See Dish Network*, 900 F.3d at 1245-48.

As held earlier, the MAA executed by Plaintiffs Olivas and Sanchez contains an

agreement to arbitrate arbitrability, albeit not one shown by an incorporation of AAA

Rules.  *See infra* p. 37 & n.9.  The language of this agreement is materially similar to

AAA Employment Arbitration Rule and Mediation Procedure 6(a), which the Tenth

Circuit found to delegate the issue of class arbitration to arbitrator in *Dish Network*.

*Compare doc. 27-5* at 4 ("[T]he Arbitrator has exclusive authority to resolve any dispute

relating to the applicability and enforceability of this Agreement."), *with Dish Network*,

900 F.3d at 1245 ("[T]he arbitrator shall have the power to rule on his or her own

jurisdiction, including any objections with respect to the existence, scope or validity of

the arbitration agreement." (quoting Am. Arb. Ass'n, Employment Arbitration Rules

and Mediation Procedures 6(a) (2009))).  Applying *Dish Network,* the District Court for

the Western District of Oklahoma has held that an agreement to arbitrate arbitrability analogous to that in Plaintiffs Olivas and Sanchez's MAAs delegates the issue of class arbitration to the arbitrator.  *See Brown v. Bob Moore Auto Grp., LLC*, Case No. CIV-19-409-R, 2019 WL 3976848, at *7 (W.D. Okla. Aug. 22, 2019) (Agreement "to settle by binding arbitration … any dispute with respect to the existence, scope or validity of this Agreement.").  Due to the similarities between Plaintiffs Olivas and Sanchez's agreements to arbitrate arbitrability and the agreements in *Dish Network* and *Brown*, the Court concludes that among the disputes about applicability that these Plaintiffs' agreements delegate to the arbitrator is the dispute between Defendants and these Plaintiffs about whether these Plaintiffs may arbitrate as a class.

2. *Plaintiffs other than Plaintiffs Olivas and Sanchez*

The arbitration agreements involving Electronic MAA Plaintiffs and 18-Clause Written MAA Plaintiffs contain class action waivers that require these Plaintiffs to arbitrate their claims against Defendants as individuals.  *See doc. 27-1* at 3 (manifesting an agreement by the parties to this MAA "to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis); *doc. 27-27* at 2 (same); *doc. 27-54* at 2 (same); *doc. 27-42* at 2 ("The parties agree to arbitrate solely on an individual basis, and that this agreement does not permit class arbitration or any claims brought as a plaintiff or class member in any class or representative arbitration proceeding …."); *doc. 27-46* at 2 (same); *doc. 27-68* at 2

50

(same); *doc. 27-72* at 2 (same).  As noted earlier, the agreements also provide that the enforcement of these waivers is a matter for the Court, not the arbitrator.  *See doc. 27-1* at 3-4; *doc. 27-27* at 2; *doc. 27-42* at 2; *doc. 27-46* at 2; *doc. 27-54* at 2; *doc. 27-68* at 2; *doc. 27-72* at 2.  The FAA requires the Court to enforce these waivers according to their terms so long as no ground for revocation exists in law or equity (such as fraud, duress, unconscionability, and other generally applicable contract defenses).  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Plaintiffs argue that these waivers are unconscionable.  *See doc. 37* at 24-31 (contending the arbitration agreements as a whole are unconscionable).  The Court disagrees.  As noted earlier, bilateral class action waivers like the waivers at bar are not substantively unconscionable.  *See Epic Sys. Corp.*, 138 S. Ct. at 1623.  As for procedural unconscionability, any unfairness present when Electronic MAA Plaintiffs and 18-Clause Written MAA Plaintiffs agreed to waive class arbitration is insufficient for the Court to find the waivers procedurally unconscionable for the same reasons that this unfairness is insufficient for the Court to find these Plaintiffs' agreements to arbitrate arbitrability procedurally unconscionable.

## C.  DISMISSAL

The Court stays proceedings as to, rather than dismisses, the claims of Plaintiffs that are subject to arbitration.  Where a party moves for a stay pending the completion of arbitration, the FAA requires the Court to grant it, rather dismiss the party's claims.

*See Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994).  In their

response to Defendants' Motions, Plaintiffs request the Court to "stay the case rather

than refer[] it to arbitration."  *See doc. 37* at 32-33.  Requests for relief in response briefs

are generally disfavored.  *See Hartford Cas. Ins. Co. v. Trinity Universal Ins. Co. of Kan.*,

Civ. No. 12-1110 MV/KK, 2015 WL 12720321, at *1 n.1 (D.N.M. Apr. 17, 2015); *Huerta v.*

*Bioscrip Pharmacy Servs., Inc.*, CIVIL NO. 09-485 RHS/LFG, 2010 WL 11523887, at *1 n.1

(D.N.M. June 17, 2010).  The Court, though, exercises its discretion to consider and grant

Plaintiffs' request for a stay given the clear, binding language in *Adair Bus Sales* and its

common practice of granting requests for a stay raised in response briefs in proceedings

to compel arbitration.  *See, e.g.*, *Rager v. Pecos Valley Pizza, Inc.*, No. 18-CV-571-WPJ, 2019

WL 825736, at *2 (D.N.M. Feb. 21, 2019).

### D.  JURY TRIAL

Trial on whether agreements to arbitrate exists between Defendants and each of

Plaintiffs Carroll and Rocha and the terms of any such agreements shall be by jury.  9

U.S.C. § 4 states that where factual disputes exist about the existence of an arbitration

agreement or the failure to comply therewith, "the court shall hear and determine such

issue" unless "the party alleged to be in default … on or before the return day of the

notice of application demand[s] a jury trial of such issue."  9 U.S.C. § 4.  Federal Rule of

Civil Procedure 38 provides that a party may demand a jury trial by "serving the other

parties with a written demand—which may be included in a pleading."  Fed. R. Civ. P.

38(b).  It also clarifies that unless a party demanding a jury trial specifies in its demand

"the issues that it wishes to have tried by a jury[,] it is considered to have demanded a

jury trial on all the issues so triable."  Fed. R. Civ. P. 38(c).

Courts are split over the extent to which 9 U.S.C. § 4 displaces Federal Rule of

Civil Procedure 38.  The majority rule interprets the statute to dictate both how and

when a party opposing arbitration must request a jury trial and so holds that a general

request for a jury trial under Federal Rule of Civil Procedure 38(b) is not a request for a

jury trial about the existence of an arbitration agreement.  *See, e.g., Burch v. P.J. Cheese,*

*Inc.*, 861 F.3d 1338, 1348-49 (11th Cir. 2017); *Klink v. ABC Phones of N.C., Inc.*, Case No.

20-cv-06276-EMC, 2021 WL 3709167, at *7 (N.D. Cal. Aug. 20, 2021) (following *Burch*);

*Mayorga v. Ronaldo*, 491 F. Supp. 3d 840, 857 (D. Nev. Sept. 30, 2020) (same).  One

minority rule, by contrast, reads the statute to dictate only when the party opposing

arbitration must request a jury trial and so holds that a general request for a jury trial

under Federal Rule of Civil Procedure 38(b) is a request for a jury trial whether an

agreement to arbitrate exists.  *See Garren v. CVS Rx Servs., Inc.*, Case No. 3:17-cv-149,

2019 WL 164808, at *4-7 (E.D. Tenn. Jan. 10, 2019).  A second minority rule strikes a

middle ground and holds that a general request for a jury trial under Federal Rule of

Civil Procedure 38(b) is only a request for a jury trial about the existence of an

arbitration agreement if the operative complaint alleges the existence or nonexistence of

that agreement.  *See Yeomans v. World Fin. Grp. Ins. Agency, LLC*, Nos. 20-16937, 20-73758, 2021 WL 5356537, at *2 (9th Cir. Nov. 17, 2021).

Assuming without deciding that the majority rule or second minority rule applies,[12] the Court concludes that Plaintiffs Carroll and Rocha have twice made the specific request for a jury trial that these rules read 9 U.S.C. § 4 to require: once in their Response to Defendants' Motion to Stay Discovery and Motion for Jury Trial on Arbitrability on November 18, 2021, *see doc. 35* at 5, and again in their Motion for Jury Trial on Arbitrability on January 20, 2022, *see doc. 56* at 4.  The first request was timely as it predated Plaintiffs' Response to Defendants' Motion to Compel Arbitration.  *See, e.g., Clifford v. Trump*, Case No.: CV 18-02217 SJO (FFMx), 2018 WL 5263189, at *2 (C.D. Cal. Mar. 29, 2018) (citing, *inter alia, Burch*, 861 F.3d at 1349 n. 19) (interpreting 9 U.S.C. § 4's deadline to request a jury trial on arbitrability to be on or before the filing of a response in opposition to a motion to compel arbitration).  The second request is untimely as it postdates that Response.  The Court declined to "consider [the first] request as it was raised in a response brief" to Defendants' Motion to Stay.  *See doc. 47* at 2 n.1.

---

[12] The second minority rule and the majority rule have the same analysis here as Plaintiffs Carroll and Rocha's Class Action Complaint does not allege the existence or nonexistence of an arbitration agreement. *See generally doc. 1*.  If the first minority rule applies, then Plaintiffs Carroll and Rocha's general jury demand in their Complaint, *see id*. at ¶ 71, is a timely request for a jury trial on the disputed facts.

Now, the Court exercises its discretion to revisit this interlocutory order.  *See*

*Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011).  Courts routinely consider

specific jury demands raised in response briefs during FAA proceedings.  *See, e.g.*,

*Hudson v. P.I.P., Inc.*, CASE NO. 18-61877-CIV-MORENO/STRAUSS, 2020 WL 5647009,

at *7 (S.D. Fla. Mar. 13, 2020); *Dassero v. Edwards*, 190 F. Supp. 2d 544, 557 (W.D.N.Y.

2002).  Admittingly, those demands are traditionally made in responses briefs to

motions to compel arbitration rather than motions to stay discovery.  *See, e.g.*, *Hudson*,

2020 WL 5647009, at *7; *Dassero*, 190 F. Supp. 2d at 557.

The Court, though, does not believe location of the specific demand matters here.

Plaintiffs' specific jury demand in their Response to Defendants' Motion to Stay

Discovery and Motion for Jury Trial on Arbitrability notified Defendants and the Court

of Plaintiffs' request for "a jury trial on the issue of arbitrability should the Court not

deny … Defendants' Motion [to Compel Arbitration] outright."  *See doc. 35* at 4-5.  As

the Court "d[id] not consider this request" when adjudicating Defendants' Motion to

Stay Discovery, *see doc. 47* at 2 n.1, the Court revisits it now that it is deferring judgment

on Defendants' Motion to Compel Arbitration as to Plaintiffs Carroll and Rocha

pending the resolution of genuine disputes of material fact at trial.  Due to the routine

practice of considering requests for jury trials in response briefs during FAA

proceedings, the clarity and specificity of the requests in Plaintiffs' Response to

Defendants' Motion to Stay Discovery and Motion for Jury Trial on Arbitrability, and

genuine issues of material fact about contract formation as to Plaintiffs Carroll and

Rocha, the Court exercises its discretion to reverse in part its earlier refusal to consider

that request and grants that request as to these two Plaintiffs.[13]

## IV.    CONCLUSION

For the above reasons, the Court (i) REVISITS Plaintiffs' Motion for Jury Trial on

Arbitrability (*doc. 35*), GRANTS this Motion IN PART as to Plaintiffs Carroll and Rocha,

and DENIES this Motion IN PART as to other Plaintiffs; (ii) DENIES Plaintiff's Motion

for Jury Trial on Arbitrability (*doc. 56*) as MOOT; (iii) GRANTS Defendants' Motion to

Compel Arbitrability (*doc. 27*) IN PART as to Plaintiffs other than Plaintiffs Carroll,

Guerrero, and Rocha, DENIES this Motion IN PART as to Plaintiff Guerrero, and

DEFERS JUDGMENT on this Motion IN PART as to Plaintiffs Carroll and Rocha

pending a summary jury trial to resolve genuine issues of material fact; (iv) GRANTS

Defendants' Motion to Enforce Class Action Waivers (*doc. 27*) IN PART as to Plaintiffs

---

[13] In the alternative, the Court finds (i) good cause to extend the statutory deadline in 9 U.S.C. § 4 for Plaintiffs to make their specific jury demand through January 20, 2022, and (ii) excusable neglect for Plaintiffs' belated request for that extension.  The Federal Rules of Civil Procedure apply to proceedings under 9 U.S.C. except as the statute provides otherwise.  Fed. R. Civ. P. 81(a)(6)(B).  9 U.S.C. § 6 specifies that proceedings under the statute "shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided."  9 U.S.C. § 6.  Even when read expansively under the majority rule, 9 U.S.C. § 4 is silent about whether its deadline for a specific jury demand is subject to extension.  Therefore, the good cause and excusable neglect standards of Federal Rule of Civil Procedure 6(b) apply to this deadline.  *See Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 931 (11th Cir. 1990) ("The rules of procedure provided in the Federal Arbitration Act govern proceedings arising under that Act.  It is only where the Arbitration Act is silent that the Federal Rules of Civil Procedure become applicable.").  As Plaintiffs satisfy these standards here, the Court would grant Plaintiffs' Motion for Jury Trial on Arbitrability (*doc. 56*) as to Plaintiffs Carroll and Rocha due to the genuine issues of material fact about contract formation as to these two Plaintiffs if its grant of Plaintiffs' earlier Motion for Jury Trial on Arbitrability (*doc. 35*) did not moot this Motion.

other than Plaintiffs Carroll, Guerrero, Rocha, Olivas, and Sanchez, DENIES this Motion

IN PART as to Plaintiffs Guerrero, Olivas, and Sanchez, and DEFERS JUDGMENT on

this Motion IN PART as to Plaintiffs Carroll and Rocha pending a summary jury trial to

resolve genuine issues of material fact; and (v) DENIES Defendants' Motion to Dismiss

(*doc. 27*) as to all Plaintiffs.  All denials as to Plaintiff Guerrero are WITHOUT

PREJUDICE to the parties' renewing their motions as to him.

IT IS HEREBY ORDERED that (i) Plaintiffs other than Plaintiffs Carroll,

Guerrero, and Rocha shall ARBITRATE their disputes with Defendants; (ii) the case is

STAYED as to these Plaintiffs for the pendency of their arbitration; and (iii) Plaintiffs

other than Plaintiffs Olivas and Sanchez shall arbitrate AS INDIVIDUALS.

IT IS ALSO ORDERED that the parties shall APPEAR for a telephonic trial

scheduling conference on **July 20, 2022, at 2:00 p.m.** to address the scheduling and

location of the summary jury trial for Plaintiffs Carroll and Rocha and other significant

pre-trial hearings.[14]  The parties shall call Judge Wormuth's teleconference line at **(877)**

**402-9753, access code 7578461,** to connect to the proceedings.

IT IS FURTHER ORDERED that the parties shall MEET AND CONFER ABOUT

this Order's application to Plaintiff Guerrero under the following schedule: (i)

---

[14] Practice in this case shall be in accordance with the Local Rules and the rules laid out in Judge Wormuth's court website page.  Counsel are directed to familiarize themselves with those rules found at https://www.nmd.uscourts.gov/content/honorable-gregory-b-wormuth under the tabs labeled "Rules and Courtroom Decorum for All Cases" and "Procedures for Civil Consent Cases."

Defendants shall, **within two (2) weeks of the entry of this Order**, serve Plaintiffs with any exhibits about Plaintiff Guerrero's agreement to arbitrate and/or waive class proceedings that they would attach to any forthcoming motion to compel arbitration and/or enforce class action waivers; (ii) Plaintiffs shall, **within one (1) week of their receipt of Defendants' exhibits**, serve Defendants with any exhibits about Plaintiff Guerrero's agreement (or non-agreement) that they would use to oppose that forthcoming motion; and (iii) the parties shall meet and confer about this Order's application to Plaintiff Guerrero and cooperatively file a Joint Status Report about their conclusions **within four (4) weeks of the entry of this Order**.  If the parties do not reach a consensus about this Order's application to Plaintiff Guerrero, the Court will set briefing deadlines for the applicable motions for Plaintiff Guerrero at the telephonic trial scheduling conference.

      **IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**